IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GERALD L. LOTT et al., )<br>)<br>    Plaintiffs, )<br>v. )<br>)<br>SWIFT TRANSPORTATION )<br>COMPANY, INC. et al., )<br>)<br>    Defendants. ) | Case No. 2:09-cv-02287 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SWIFT TRANSPORTATION COMPANY, INC.'S MOTION TO DISMISS**

Before the Court is Defendant Swift Transportation Company, Inc.'s ("Swift") Motion to Dismiss filed on February 19, 2010. (D.E. #58.) Plaintiffs Gerald L. Lott et al. (collectively, "Plaintiffs") filed a response in opposition on March 1, 2010. For the reasons stated below, Swift's motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**[1]

Plaintiff Gerald Lott is a resident of Memphis, Tennessee, Plaintiff Francisco Armenta is a resident of Tobyhanna, Pennsylvania, and Plaintiff Ronda Kell is a resident of Horse Cave, Kentucky. (Pls.' First Am. Class Action Compl. ¶¶ 11-13.) Plaintiffs bring this suit as a putative class action against Swift—a corporation organized under the laws of the State of Nevada with its principal place of business located in Phoenix, Arizona—and Commissioner David Mitchell ("Commissioner Mitchell") of the Tennessee Department of Safety. (Id. ¶¶ 18, 20.)

---

[1] The following factual recitation is taken from Plaintiffs' First Amended Complaint filed on January 25, 2010 and is assumed to be true for purposes of this motion only.

Swift formerly operated the Swift Driving Academy ("Swift Academy"), a truck driver training school in Millington, Tennessee for individuals wishing to obtain Class A Commercial Driver's Licenses ("CDLs") from the State of Tennessee. (Id. ¶¶ 39, 43.) Swift and each of its students entered into a written contract governing the training provided by the Swift Academy. (Id. ¶ 47.) Swift charged $3,900 per student for tuition, an amount which students could elect to finance by authorizing Swift to make deductions from their future pay. (Id. ¶ 46.)

Apart from its role as a training school, Swift also administered official testing of CDL license applicants for the State of Tennessee from May 1, 2005 to January 31, 2008. (Id. ¶ 51-52, 58.) Students paid Swift $150 to receive the CDL test—a service not included in or governed by the written contract with Swift for training. (Id. ¶¶ 52-55.) As with all members of the putative class, Plaintiffs received CDLs from the State of Tennessee based upon their passage of CDL tests administered by Swift. (See id. ¶¶ 13-15.)

In December 2008, Commissioner Mitchell announced that Swift's CDL testing failed to comply with applicable rules and regulations, though he did not specify in what respects Swift's actions violated the law. (Id. ¶¶ 61-62.) Following this determination, Commissioner Mitchell revoked Swift's authority to conduct CDL testing and nullified all test results and certifications from Swift issued between May 1, 2005 and January 31, 2008. (Id. ¶¶ 66-68.) Commissioner Mitchell also revoked all Tennessee CDL licenses that had been granted based on Swift's testing during this time period. (Id. ¶ 68.) These revocations occurred without affording CDL license holders the opportunity to challenge the loss of their licenses. (Id. ¶ 71.) Many of the students whose Tennessee CDLs

Commissioner Mitchell invalidated had previously moved from Tennessee and obtained CDLs in other states, and the validity of those licenses depended upon the validity of the original Tennessee CDL. (Id. ¶¶ 94, 96-99.) Commissioner Mitchell sent letters to the coordinators of CDL testing programs in other states, notifying these officials of the revocations and advising them that drivers who had received their CDLs through testing by Swift should be required to submit to retesting. (Id. ¶¶ 94, 105-06.) The only redress offered to the affected license holders was the option of retaking the CDL test, using their own tractor trailer during the test—an extremely difficult undertaking for those who do not own their own truck. (Id. ¶¶ 116, 120, 124.)

Plaintiffs filed the instant suit in the United States District Court for the Western District of Tennessee on May 7, 2009 and filed an amended complaint on January 25, 2010. Plaintiffs seek to have the case certified as a class action and allege causes of action under 42 U.S.C. § 1983 as well as under state law for unjust enrichment, negligence, breach of good faith and fair dealing, equitable, declaratory and injunctive relief, and breach of contract as to Plaintiffs as third-party beneficiaries.

## II. LEGAL STANDARD

**A. Legal Standard for Motion under Fed. R. Civ. P. 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure asserts that the court lacks subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction may challenge the sufficiency of the complaint itself—in which case it constitutes a facial attack—or it may challenge the factual existence of subject matter jurisdiction—in which case the motion constitutes a factual attack. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). In ruling upon a facial attack, the

3

court must take as true the allegations of the plaintiff's complaint and construe them in the light most favorable to the plaintiff, but in a factual attack, the court does not presume that the complaint's allegations are true and instead considers other evidence bearing upon the question of subject matter jurisdiction. DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). When faced with a factual attack, the trial court may, at its discretion, consider affidavits and documents and even conduct a limited evidentiary hearing to resolve any disputes as to jurisdictional facts. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of proving jurisdiction on a motion to dismiss under Rule 12(b)(1). Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986); see United Gov't Sec. Officers of Am. v. Akal Sec., Inc., 475 F. Supp. 2d 732, 736 (S.D. Ohio 2006).

**B. Legal Standard for Motion under Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure only tests whether a cognizable claim has been pled. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). To determine whether a motion to dismiss should be granted, the court examines the complaint, which must contain a short and plain statement of the claim showing that the pleader is entitled to relief. See Fed. R. Civ. P. 8(a)(2). It must also provide the defendant with fair notice of the plaintiff's claim as well as the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957); Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). While the complaint need not present detailed factual allegations, to be cognizable it must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

suffice.  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007); see also Scheid, 859 F.2d at 436-37.

Likewise, the complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level[.]"  Twombly, 127 S. Ct. at 1965 (citation omitted).  The mere possibility that some set of undisclosed facts will support recovery is insufficient to overcome a 12(b)(6) challenge.  Twombly, 127 S. Ct. at 1968; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").  On a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations made in the complaint and construes them in the light most favorable to the plaintiff.  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295-96 (6th Cir. 2008); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983).  The court, however, only takes as true well-pled facts, and it will not accept legal conclusions or unwarranted factual inferences.  Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405-06 (6th Cir. 1998); see Iqbal, 129 S. Ct. at 1949.

### III. ANALYSIS

**A. Claim under 42 U.S.C. § 1983**

Swift first argues that Plaintiffs' asserted cause of action under 42 U.S.C. § 1983 fails as a matter of law because (1) Plaintiffs do not allege that Swift approved or participated in any deprivation of Plaintiffs' constitutional rights; and (2) Plaintiffs do not allege that Swift has a policy that directly resulted in the deprivation of Plaintiffs' constitutional rights.

Considering Swift's second point first, the Court disagrees that Plaintiffs' failure to identify in their complaint the particular policy or custom responsible for the alleged deprivation of their rights necessarily mandates dismissal under Rule 12. Although Swift correctly notes that a private corporation can only be held liable under § 1983 when it has a policy or custom that causes a civil rights violation, see Street v. Corrections Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996), complaints under § 1983 are not subject to any heightened pleading standards, Leatherman v. Tarrant County Narcotics Intelligence and Coordination, 507 U.S. 163, 167-68 (1993). Instead, a plaintiff's complaint—whether it seeks relief under § 1983 or under any other legal theory—must be plausible and not merely conceivable. See Iqbal, 129 S. Ct. at 1950-51. Identifying the precise policy or custom may help make the complaint's allegations more plausible, but categorically viewing such a failure as dispositive in every case involving § 1983 claims risks imposing a higher standard of pleading than the Federal Rules of Civil Procedure mandate. Cf. Woodley v. City of Memphis, 479 F. Supp. 2d 756, 765-66 (W.D. Tenn. 2006) (discussing Moreno v. Metro. Gen. Hosp., 210 F.3d 372, 2000 WL 353537, at *2 (6th Cir. 2000)).

The Court nevertheless agrees with Swift that Plaintiffs have not sufficiently alleged a cause of action against Swift under § 1983. The gravamen of Plaintiffs' allegations against state authorities consists of assertions that they deprived CDL-holders of due process in revoking their CDLs without providing a pre-deprivation hearing and affording other protections consistent with due process. In addressing Swift's role in that deprivation, Plaintiffs allege only that Swift acted as a third-party tester for the State of Tennessee. Although it is plausible that Swift's role as a tester might under certain

6

circumstances subject Swift to § 1983 liability as an agent acting under color of state law, this fact alone is not sufficient to transform any and all harm Swift may inflict in the course of its business into a federal civil rights violation.  Swift's alleged misconduct in administering tests appears to be unconnected to state authorities' alleged violations of Plaintiffs' due process rights—the only civil rights violations alleged in Plaintiffs' complaint.  As Swift notes, Plaintiffs allege no facts that would implicate Swift in a due process violation by governmental agencies, and Plaintiffs have failed to explain how Swift's flawed testing procedures are themselves actionable under § 1983.

Plaintiffs may have been harmed by Commissioner Mitchell's revocation of their CDLs, and Plaintiffs may have also been harmed by Swift's testing procedures.  On the face of Plaintiffs' complaint, however, these are distinct wrongs, and the Court finds no basis for holding Swift liable under § 1983.  Accordingly, Plaintiffs' § 1983 claims as to Swift are dismissed.

**B. Unjust Enrichment**

Plaintiffs also bring a cause of action for unjust enrichment.  "The elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable [ ] to retain the benefit without payment of the value thereof.'"  Freeman Indus., LLC v. Eastman Chem, Co., Inc., 172 S.W.3d 512, 525 (Tenn. 2005) (quoting Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (1966)).

Recognizing that Plaintiffs' unjust enrichment claim arises from Plaintiffs' payments to Swift for testing rather than training, Swift contends that Plaintiffs should be

limited in their recovery to the amount paid by Plaintiffs as a testing fee—$150 per class member.  The existence of a written contract for training, says Swift, precludes any other recovery.  Because Plaintiffs are suing for testing services unrelated to the services covered by the training contracts, Plaintiffs' claims for unjust enrichment are not affected by the written contracts for training.  The Court agrees with Plaintiffs that Swift's request to effectively cap Plaintiffs' damages by means of a Rule 12 motion is premature, and the requested relief is therefore denied.

**C. Negligence Claim**

Swift next argues that Plaintiffs' claim for recovery under a theory of negligence must be dismissed under the economic loss doctrine.  The economic loss doctrine is "a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss." Lincoln Gen. Ins. Co. v. Detroit Diesel Corp., 293 S.W.3d 487, 488 (Tenn. 2009).[2]  According to Swift, the economic loss doctrine applies to all actions brought in tort, while Plaintiffs argue that the doctrine only applies to cases involving defective products and not to cases arising from the negligent provision of services.  Although the Tennessee Supreme Court has stated that "Tennessee has joined those jurisdictions which hold that product liability claims resulting in pure economic loss can be better resolved on theories other than negligence," Ritter v. Custom Chemicides, Inc., 912 S.W.2d 128, 133 (Tenn. 1995), Tennessee's highest court has never addressed whether the economic loss doctrine applies outside of the products liability context.  "If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including

---

[2] The Tennessee Supreme Court has further said that "[t]he economic loss doctrine is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property." Lincoln Gen. Ins. Co., 239 S.W.3d at 489.

8

the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the 'majority' rule, what the state's highest court would decide if faced with the issue." Am. and Foreign Ins. Co. v. Bolt, 106 F.3d 155, 158 (6th Cir. 1997) (quoting Grantham and Mann v. Am. Safety Prods., Inc., 831 F.2d 596, 608 (6th Cir. 1987)).

In the sole published Tennessee case that Swift cites directly addressing the issue, United Textile Workers v. Lear Siegler Seating Corp., the court of appeals held that the economic loss doctrine precluded a suit by workers seeking lost wages against a factory owner whose propane tank leaked and caused the workers to lose a day of pay when their places of employment were closed. 825 S.W.2d 83, 84 (Tenn. Ct. App. 1990). The court stated that it was "disallow[ing] recovery for purely economic loss absent physical injury or property damage." Id. at 86. One judge dissented from the court's application of the economic loss doctrine, arguing that the majority was "mechanically applying" a "dated" rule. Id. (Franks, J., dissenting).

The Tennessee Court of Appeals has since implicitly restricted the economic loss doctrine to claims involving products liability or the sale of goods, at least where the plaintiff can establish a sufficiently direct relationship between the defendant's negligent act and the plaintiff's economic loss. Trinity Indus., Inc. v. McKinnon Bridge Co., Inc., 77 S.W.3d 159, 173-74, 182 (Tenn. Ct. App. 2001) (appearing to limit economic loss doctrine to cases involving sale of goods under the UCC) (discussing Sain v. ARA, 660 S.W.2d 499 (Tenn. Ct. App. 1983)). Furthermore, in a subsequent unpublished opinion from the Tennessee Court of Appeals written by now Justice Koch of the Tennessee

9

Supreme Court, the court discussed the economic loss doctrine, apparently confining its applicability to the sale of goods by stating the following:

> The economic loss rule is a judicially created principle that requires parties to live by their contracts rather than to pursue tort actions for purely economic losses arising out of the contract. The rule comes into play when the purchaser of a *product* sustains economic loss without personal injury or damage to property other than the *product* itself. In that circumstance, the purchaser must seek a remedy in contract, not in tort. Thus, when a purchaser's expectations in a sale are frustrated because a *product* does not work properly, the purchaser's remedies are limited to those prescribed by the law of contract.

McLean v. Bourget's Bike Works, Inc., No. M2003-01944-COA-R3-CV, 2005 WL 2493479, at *5 (Tenn. Ct. App. Oct. 7, 2005) (internal citations omitted and emphasis added). Moreover, federal courts applying Tennessee law have declined to extend the economic loss doctrine beyond cases involving the sale of goods. See, e.g., Corso Enters., Inc. v. Shop at Home Network, Inc., No. 3:04-0260, 2005 WL 2346986, at *6-7 & n.7 (M.D. Tenn. Sept. 26, 2005) ("Thus, governance by the UCC of the contract at issue is a prerequisite to the application of the economic loss doctrine and resulting preclusion of recovery in tort.").

In confronting whether the economic loss doctrine should apply to transactions involving services, the Wisconsin Supreme Court noted that the "genesis of the economic loss doctrine lies in products liability cases." Ins. Co. of North Am. v. Cease Elec. Inc., 688 N.W.2d 462, 467 (Wis. 2004). Application of the economic loss doctrine to cases involving defective products is not surprising, the court reasoned, because the Uniform Commercial Code ("UCC") sets forth the full series of rights and remedies available to an aggrieved purchaser who suffers only economic losses. Id. at 467-68. Since the UCC is inapplicable to service contracts, the court held that it would not apply the economic loss

10

doctrine to suits seeking recovery for negligently provided services. Id. at 470, 472. This rationale for limiting the economic loss doctrine echoes that expressed by the Tennessee Supreme Court in deciding to limit a plaintiff suing for a defective product who sustained only economic losses to remedies under the UCC instead of allowing the plaintiff to proceed under a theory of negligence. Ritter, 912 S.W.2d at 133 & n.8. If the existence of UCC remedies provides the justification for not allowing the plaintiff to sue in tort, the absence of UCC remedies should counsel in favor of allowing tort recovery. Thus, the Court believes that, like the Wisconsin Supreme Court, the Tennessee Supreme Court would rely on the fact that the economic loss doctrine has its origins in the UCC to preclude application of the doctrine to suits not involving UCC remedies, specifically those concerning the provision of services.

Considering all appropriate indicia, the Court concludes that the Tennessee Supreme Court would decline to extend the economic loss doctrine to cases involving the provision of services if squarely faced with this question. Accordingly, Swift's request to dismiss Plaintiff's negligence claim is denied.

**D. Breach of Covenant of Good Faith and Fair Dealing**

Swift contends as well that the Court should dismiss Plaintiffs' cause of action for breach of the covenant of good faith and fair dealing. A covenant of good faith and fair dealing is implied in every contract, and "[a]s a result of this covenant, each contracting party promises to perform its part of the contract in good faith and, in return, expects the other party to do the same." Goot v. Metro. Gov't of Nashville & Davidson County, No. M2003-02013-COA-R3-CV, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005). The exact nature of this duty varies in each case based upon the terms of the contract at

11

issue. TSC Indus., Inc. v. Tomlin, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987). A fiduciary relationship between parties also gives rise to a requirement to act in good faith and deal fairly. See MFA Mut. Ins. Co. v. Flint, 574 S.W.2d 718, 721 (Tenn. 1978). According to Swift's motion, Plaintiffs have not alleged a fiduciary or contractual relationship between themselves and Swift.

The Court agrees with Plaintiffs that the proof in this case may establish the existence of an unwritten agreement between Swift and Plaintiffs regarding CDL testing, and Plaintiffs' complaint sufficiently alleges this as an alternative theory of recovery. It is thus inappropriate to dismiss claims that could arise from such a relationship, including a claim for breach of the covenant of good faith and fair dealing.

### E. "Equitable, Declaratory, and Injunctive Relief"

Swift similarly argues that the Court should dismiss the claims in Count Four of Plaintiffs' First Amended Complaint, which ask for "equitable, declaratory, and injunctive" relief. Swift asserts that this claim seeks to preclude Swift from collecting funds owed by Plaintiffs under their tuition contracts. Plaintiffs' response brief does not address this argument. However, the allegations of Plaintiffs' First Amended Complaint are clearly directed towards the parties' relationship with respect to testing, not training or the payment of tuition. As previously stated, the proof as to the precise nature of the parties' relationship with respect to CDL testing has not been developed, but Plaintiffs' First Amended Complaint sufficiently places Swift on notice that Plaintiffs' suit includes a theory of recovery based upon an agreement with Plaintiffs for testing. Accordingly, this aspect of Swift's motion is denied.

**F. Third-Party Beneficiary Claim**

Swift further challenges Plaintiffs' standing to bring suit as third-party beneficiaries of the State of Tennessee's contract with Swift to conduct CDL testing. To qualify as a third-party beneficiary, Tennessee law requires the following:

> (1) The parties to the contract have not otherwise agreed;
>
> (2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and
>
> (3) The terms of the contract or the circumstances surrounding performance indicate that either:
>
>> (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or
>>
>> (b) the promisee intends to give the beneficiary the benefit of the promised performance.

Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc., 59 S.W.3d 63, 70 (Tenn. 2001) (adopting position of Restatement (Second) of Contracts); see Benton v. Vanderbilt Univ., 137 S.W.3d 614, 618 (Tenn. 2004).

Plaintiffs argue that they were third-party beneficiaries of the State of Tennessee's contract with Swift because state law required the Tennessee Department of Transportation to establish CDL testing procedures and facilities for applicants like Plaintiffs, and the State discharged this obligation by contracting with Swift. Without conclusively deciding that Plaintiffs were third-party beneficiaries of Swift's agreement with the State of Tennessee, the Court nevertheless finds that Plaintiffs' First Amended Complaint sufficiently alleges facts which make Plaintiff's asserted cause of action against Swift under a third-party beneficiary theory plausible, and Swift's motion is thus denied with respect to this claim.

**G. Ripeness and Exhaustion**

Finally, Swift argues that Plaintiffs' complaint should be dismissed in its entirety under Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiffs have not exhausted available administrative remedies and Plaintiffs' claims are not yet ripe for adjudication.

The doctrine of ripeness precludes courts from entering into disputes that are speculative, contingent, and not yet amenable to judicial review. Kentucky Press Ass'n, Inc. v. Kentucky, 454 F.3d 505, 509 (6th Cir. 2006). "The ripeness doctrine not only depends on the finding of a case or controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." Brown v. Ferro Corp., 763 F.2d 798, 801 (6th Cir. 1985). The related requirement of exhaustion of administrative remedies is largely—though not exclusively—a creature of statute and is imposed where appropriate to fully develop issues in a contest over an agency's actions. See Sims v. Apfel, 530 U.S. 103, 108-110 (2000); see also Coalition for Gov't Procurement v. Federal Prison Indus., Inc., 365 F.3d 435, 453-64 (6th Cir. 2004). Exhaustion protects agency authority by allowing the agency to correct its own mistakes and promotes efficiency by allowing claims to be developed and possibly resolved quickly and economically without resorting to litigation in the first instance. Woodford v. Ngo, 548 U.S. 81, 88-89 (2006); Fazzini v. Northeast Ohio Correctional Ctr., 473 F.3d 228, 232 (6th Cir. 2006).

According to Swift, the revocation of Plaintiffs' CDLs is still subject to challenge in administrative proceedings before the Tennessee Department of Safety and other responsible state agencies and, as a result, Plaintiffs have not exhausted available

administrative remedies.  Simply having their licenses reinstated, however, would not make Plaintiffs whole and provide the relief they seek in the instant case.  Plaintiffs are pursuing money damages from Swift, and this is not something that can be obtained before state licensing authorities.  Thus, the Court rejects Swift's arguments regarding exhaustion.

Swift also argues that Plaintiffs' claims are not ripe, again, because Plaintiffs have not challenged the revocation of their licenses through administrative remedies.  Plaintiffs have already had their licenses revoked by state authorities.  The injury Plaintiffs describe is not hypothetical or speculative, but instead constitutes an allegation of final harm that is ripe for judicial review.  Accordingly, the Court rejects Swift's arguments as to ripeness and exhaustion.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Swift's motion to dismiss.  Plaintiffs' claim for relief under 42 U.S.C. § 1983 is **DISMISSED**.  Swift's motion is otherwise **DENIED**.

**IT IS SO ORDERED**, this the 17th day of March, 2010.

                                           s/Bernice Bouie Donald
                                           **BERNICE BOUIE DONALD**
                                           **UNITED STATES DISTRICT JUDGE**